AO 106 (Rev. 01/09) Application for a Search Warrant

# United States District Court
### for the
### Western District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

**APPLE IPhone, white and gold in color with a pink case, IMEI# 358370062331330**

Case No. 18-M- 7

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**APPLE IPhone, white and gold in color with a pink case, IMEI# 358370062331330**

located in the Western District of New York, there is now concealed *(identify the person or describe the property to be seized)*:
See descriptions included in Attachment A, attached and incorporated by reference.

The basis for search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of 21 U.S.C. §§ 841(a)(1), 843(b), 844(a), and 846

The application is based on these facts:

- ☒ continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

VALENTINE T. ZIMNIEWICZ, JR.
Task Force Officer
Drug Enforcement Administration
*Printed name and title*

Sworn to before me and signed in my presence.

Date: February 2, 2018

_____
*Judge's signature*

City and state: Buffalo, New York

HONORABLE H. KENNETH SCHROEDER, JR.
United States Magistrate Judge
*Printed name and Title*

**ATTACHMENT A**

**SCHEDULE OF ITEMS TO BE SEARCHED FOR AND SEIZED**

Items comprising evidence of, or property designed for use, intended for use, or used in committing violations of Title 21, United States Code, Sections 841(a)(1) and 846, consisting of:

a) Records of telephone calls, including incoming, outgoing, and missed calls; phone contact addresses; email addresses and telephone numbers in directories; documents and files which reflect names, email addresses, addresses, telephone numbers and objects related to drug trafficking; and audio files, video files and photographs regarding drug trafficking and drug trafficking associates contained in the cellular telephones;

b) Text messages and emails contained in the cellular telephones related to drug trafficking and drug trafficking associates; and

c) Records regarding the ownership and/or possession of the searched items.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

IN THE MATTER OF THE APPLICATION FOR
A SEARCH WARRANT AUTHORIZING THE SEARCH          18-M-
OF THE FOLLOWING CELLULAR TELEPHONE:
APPLE IPhone, IMEI# 358370062331330

_____


## AFFIDAVIT IN SUPPORT OF APPLICATION FOR
## SEARCH WARRANTS


**Valentine T. Zimniewicz Jr**, a Task Force Agent of the Drug Enforcement Administration (DEA), United States Department of Justice, Buffalo, New York, having been duly sworn, states as follows:


1.      I am a Police Detective employed by the Cheektowaga Police Department for the past 27 years. I was previously assigned as deputized Special Federal Officer from 2001-2003 with the FBI. I have been assigned as a narcotics detective since 2008. I began my assignment as a Task Force Agent (TFA) with the United States Drug Enforcement Administration (DEA) in the Buffalo Resident Office on April 4, 2012, and was administered the oath of office as duly sworn Special Federal Officer (Special Deputation). I am presently assigned to the DEA Task Force, and as such I am an "investigative or law enforcement officer" of the United States within, the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 801, et seq.

2.     During my law enforcement career, I have participated in numerous investigations targeting individuals engaging in the trafficking and distribution of narcotics. Based on my training, experience in law enforcement, and conversations with DEA Special Agents (SA's) and Task Force Agents (TFA's), and other law enforcement officers, I am familiar with how controlled substances are cultivated, manufactured, processed, packaged, distributed, sold and used by individuals involved in drug trafficking activities, and how drug traffickers use electronic communications to facilitate their illegal activities. As a result of my training and experience, I am familiar with the language, conduct and customs of people engaged in narcotics transactions conspiracies. My investigative experience, as well as the experience of other law enforcement agents who are participating in this investigation, serve as the basis for the opinions and conclusions set forth herein.

3.     Your Affiant and other Officers and Agents of the United States Drug Enforcement Administration (DEA), have been involved in an investigation regarding the drug trafficking activities of BRITTNEY RIDGEWAY and others known and unknown in violation of Title 21, United States Code Sections 841(a)(1) and 846 (hereinafter "Target Offenses"). The information contained in this affidavit is based upon your affiant's personal knowledge, upon reports and information received from other law enforcement officers and agencies and from other law enforcement activities. I submit this affidavit in support of an application for a search warrant authorizing the search of the following cellular phone; **APPLE IPhone, white and gold in color with a pink case, IMEI# 358370062331330** (hereinafter "Target Telephone").

2

4.     As it is my purpose to obtain a search warrant for which only probable cause is required, I have not included each and every fact learned during the investigation to date. On December 4, 2017, United States Magistrate Judge Schroeder signed an arrest warrant for BRITTNEY RIDGEWAY. That signed arrest warrant and criminal complaint affidavit are attached as Exhibit A and incorporated as set forth herein by reference for the purpose of establishing probable cause to search the listed cellular telephone.

## PROBABLE CAUSE

5.     On November 24, 2017 at approximately 8:30 PM, Cheektowaga Police responded to a report of a possible drug overdose death at an address in south Cheektowaga. Upon arrival, the first responding officers discovered 28 year old female deceased in the residence. The scene was secured and investigators from the Cheektowaga Police Department took over the investigation. An examination of the scene resulted in the discovery of a NARCAN kit which had been opened but unused, items of drug paraphernalia, and one (1) red and white checkers wax envelope of the type commonly used to package heroin. This envelope had been opened and did not contain any apparent drugs. Further, the decedent was familiar to investigators as a known drug user / abuser.

6.     Also discovered at the scene was a cellular phone, which was identified by witnesses as belonging to the decedent. Investigators were able to access the telephone contents at the scene and noted that there were a series of text messages between the decedent's telephone and phone number (716) 994-1453 that appeared to be drug related in nature. The texts of those messages are as follows:

11/23/2017 5:27 PM – Incoming from 716-994-1453 – "How many"

11/23/2017 5:28 PM – Outgoing to 716-994-1453 – "A B dude"

11/23/2017 5:28 PM – Outgoing to 716-994-1453 – "You said 65 right"

11/23/2017 5:28 PM – Incoming from 716-994-1453 – "Yes"

11/23/2017 5:28 PM – Outgoing to 716-994-1453 – "Really hope this is the same stuff that he has"

11/23/2017 5:29 PM – Incoming from 716-994-1453 – "If it's not the same it's just as good a 8 or 9 is what they tell me"

11/23/2017 5:31 PM – Outgoing to 716-994-1453 – "Ok"

11/24/2017 10:16 AM – Incoming from 716-994-1453 – It was the same or better?"

7.     Based on my training and experience in narcotics investigations, I interpret the referenced series of text messages to mean that the decedent is ordering one (1) bundle of heroin, referred to there as "B" with a negotiated price of $65.00. The next part of the conversation is an inquiry by the decedent as the quality of the heroin and the reply is stating that the quality is very good using a 1-10 scale.

8.     Investigators then queried a local police database and discovered that the telephone number 716-994-1453 and discovered that number had been provided to Buffalo Police as the cell phone number for Brittney C. Ridgeway on an assault report in August 2017.

9.     In late 2015 over to early 2016 a heroin and fentanyl trafficking investigation was conducted by Cheektowaga Police Narcotics investigators and the Drug Enforcement Administration. Based on that investigation, RIDGEWAY had been arrested in March of 2016 on Federal drug distribution charges. Subsequently, RIDGEWAY pleaded guilty in front of US District Court Judge Richard Arcara to conspiracy to possess with intent to distribute and distribution of fentanyl and was later sentenced to fifteen months incarceration followed by thirty-six months post release supervision. On June 28, 2017, Ridgeway was released from incarceration and began supervised release.

10.    On November 29, 2017, United States Probation Officer James Dyckman, the supervising officer for RIDGEWAY made contact with RIDGEWAY by text message at 716-994-1453 and arranged to meet RIDGEWAY at her workplace. When Dyckman arrived, he again sent a text message to RIDGEWAY at the 716-994-1453 number and advised her to come out of the workplace to meet. This was necessary as Ridgeway worked in a contaminated asbestos environment.

11.    RIDGEWAY came outside and met with Dyckman who asked her to turn over her phone as required by her probation agreement. RIDGEWAY refused to turn over her phone and stated that she did not have it with her. RIDGEWAY had no explanation for how she was exchanging text messages with Dyckman. Probation officers were then able to access the areas of the workplace that were safe to be accessed for the phone with negative results. RIDGEWAY was advised to report to probation the following day for a follow up interview.

12.     On November 30, 2017, RIDGEWAY reported to probation as directed and met with Dyckman. RIDGEWAY was again questioned regarding her phone at which time she stated that the prior day when Dyckman arrived at the workplace, RIDGEWAY gave the phone to a coworker to hold while she met with probation. When RIDGEWAY retrieved the phone later in the day, it was damaged beyond repair and she discarded the phone and got a new one. RIDGEWAY again did not provide any reason why she did not turn the phone over as required.

13.     On December 4, 2017, the United States Probation Office and USMS arrested RIDGEWAY at her place of work on a probation violation. RIDGEWAY was in possession of an APPLE IPhone, white and gold in color with a pink case, IMEI# 358370062331330 cell phone and a set of car keys at the time of arrest. RIDGEWAY had one phone registered with the United States Probation Office for supervision purposes, which was phone number 716-994-1453 as listed in the Criminal Complaint attached hereto as **Exhibit A**, which is incorporated herein by reference.  The telephone she possessed on her person on December 4, 2017, was a different phone with a different phone number, 716-370-3299. The vehicle which she had keys for was identified as New York registration HUC-7488, a 2009 Chevrolet Malibu, four door, black in color. The vehicle was parked on Lafayette St near RIDGEWAY's workplace.

14.     United States Probation Officers then excised their search authority on the vehicle. Inside the vehicle, they discovered numerous items of mail and personal papers all in the name of RIDGEWAY as well as photos of RIDGEWAY. In addition, under the

passenger seat they found a box of yellow wax envelopes of the type commonly used to package heroin. Those items were seized by probation.

15.     On December 14, 2017, US Probation Officer Beiter turned over the items seized in their investigation of RIDGEWAY, including the Target Telephone. Those items were then submitted as DEA evidence and remain in DEA custody.

16.     TFO Zimniewicz submitted an administrative subpoena to T-Mobile Communications for subscriber and call records for telephone number 716-370-3299.  The subpoena showed the phone to be subscribed to "Sally Mae" of 729 Sycamore St, Buffalo, NY 14211.  It was noted that service was initiated for the phone on November 29, 2017, the same day that US Probation conducted a search of RIDGEWAY's residence as noted in the Criminal Complaint in **Exhibit A**.

17.     TFO Zimniewicz conducted a check of local police databases and found that 729 Sycamore St, Buffalo, NY 14211 is a store known as Lucky's Market.

18.     A toll analysis on telephone numbers 716-994-1453, originally used by RIDGEWAY as described in **Exhibit A**, and 716-370-3299, the Target Telephone possessed by RIDGEWAY, show both phones to be in contact with seventeen (17) common numbers. It appears that RIDGEWAY replaced the original phone with the Target Telephone.  Based on my experience in drug trafficking investigations, traffickers often change telephones and telephone numbers to avoid detection and investigation by law enforcement. In particular,

when traffickers suspect that law enforcement officers are aware that a particular phone or phone number are being used for illegal activity, the trafficker will "drop" the phone and replace the phone number. Once the new phone is in place, the trafficker will notify other coconspirators of the new number. This results in a similar contact and call pattern between the original and new number and for the drug trafficking operation to continue.

## SUMMARY OF RELEVANT TECHNOLOGY

19.     A cellular telephone or mobile telephone is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers called "cells", enabling communication with other cellular telephones or traditional "land line" telephones. A cellular telephone usually includes a "call log", which records the telephone number, date, and time of calls made to and from the phone.


20.     In addition to enabling voice communications, cellular telephones offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device. Based on your Affiant's training and experience, and the information learned throughout this investigation, it is known that

persons associated with drug trafficking organizations in general, and RIDGEWAY specifically, utilize the cellular telephones to communicate with others about the possession, transportation, and distribution of controlled substances, including heroin.

## III.   SEEKING AUTHORIZATION TO SEARCH AND SEIZE

21.   Accordingly, the application seeks authorization to search for and seize all:

a.   Records of telephone calls, including incoming, outgoing, and missed calls, phone contact addresses, email addresses and telephone numbers in directories, documents and files which reflect names, email addresses, addresses, telephone numbers and objects related to drug trafficking, and photographs regarding drug trafficking and drug trafficking associates contained in the cellular telephones;

b.   Text messages and emails contained in the cellular telephones; and

c.   Records regarding the ownership and/or possession of the searched items.

22.   Based on my training, my experience, my participation in other narcotics investigations, my participation in this investigation, and my discussions with other experienced law enforcement personnel, I have learned that significant narcotics traffickers such as dealers in large quantities of heroin and other controlled substances frequently maintain, in portable mobile communication and storage devices, addresses, email addresses and telephone numbers in directories, documents and files which reflect names, email addresses, addresses, telephone numbers, and objects related to drug trafficking, and photographs regarding drug trafficking and drug trafficking associates contained in the cellular telephones;

23.     Based on your Affiant's experience, it is believed the Target Telephone is evidence of and/or contains evidence of the Target Offenses.  It is likely that RIDGEWAY utilized this cellular device to contact her heroin suppliers and co-conspirators regarding heroin deals.  As such, I believe that the Target Telephone described above contains evidence of the Target Offenses, which have been committed by RIDGEWAY, and others.

24.     Based on your Affiant's knowledge and training and the experience of other Agents with whom I have discussed this investigation, I know that in order to completely and accurately retrieve data maintained in cellular telephones hardware or software, to ensure the accuracy and completeness of such data, and to prevent the loss of the data either from accidental or intentional destruction, it is often necessary that the cellular telephones, related instructions in the form of manuals and notes, as well as the software utilized to operate such a device, be seized and subsequently processed by a qualified specialist in a laboratory setting.

## IV.   ANALYSIS OF ELECTRONIC DATA

25.     Searching the cellular telephones for the evidence described above may require a range of data analysis techniques.  In some cases, it is possible for Agents to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence.  For example, Agents may be able to execute a "keyword" search that searches through the files stored in a cellular telephone for special words that are likely to appear only in the materials covered in the warrant by looking for particular directory or file

names. In other cases, however, such techniques may not yield the evidence described in the warrant. Suspected criminals have the ability to mislabel or hide information and directories; encode communications to avoid using key words, attempt to delete files to evade detection; or take other steps designed to frustrate law enforcement searches for information. These steps may require Agents to conduct more extensive searches, such as scanning areas of the device's memory not allocated to listed files, or opening every file and scanning its contents briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, your Affiant requests permission to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described above.

**WHEREFORE**, based upon the foregoing, your Affiant submits that there is probable cause to believe that the previously described Target Telephone is evidence of, and/or contain evidence of the Target Offenses, and/or evidence of other co-conspirators involved in the Target Offenses, which have been and continue to be committed.

VALENTINE T. ZIMNIEWICZ, JR.
Task Force Officer
Drug Enforcement Administration

Sworn to before me

this 2nd day of January, 2018.

HONORABLE H. KENNETH SCHROEDER, JR.
United States Magistrate Judge

11

## ATTACHMENT A

## SCHEDULE OF ITEMS TO BE SEARCHED FOR AND SEIZED

Items comprising evidence of, or property designed for use, intended for use, or used in committing violations of Title 21, United States Code, Sections 841(a)(1) and 846, consisting of:

a)   Records of telephone calls, including incoming, outgoing, and missed calls; phone contact addresses; email addresses and telephone numbers in directories; documents and files which reflect names, email addresses, addresses, telephone numbers and objects related to drug trafficking; and audio files, video files and photographs regarding drug trafficking and drug trafficking associates contained in the cellular telephones;

b)   Text messages and emails contained in the cellular telephones related to drug trafficking and drug trafficking associates; and

c)   Records regarding the ownership and/or possession of the searched items.

Case 1:17-mj-00151-HKS Document 1 Filed 02/02/18 Page 15 of 23
Case 1:18-mj-00045-KBK Document 1 Filed 12/04/17 Page 1 of 9
EXHIBIT A

AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court

### for the
### Western District of New York

United States of America

v.

**Brittney Ridgeway**

_____

*Defendant*

Case No. 17-M- 151



## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Between, on or about November 23, 2017 and November 24, 2017, in the Western District of New York, the defendant, BRITTNEY RIDGEWAY, did knowingly, intentionally and unlawfully possess with intent to distribute, and distribute, heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

TFA V.T.

_____
*Complainant's signature*

VALENTINE T. ZIMNIEWICZ JR.
TASK FORCE AGENT
DRUG ENFORCEMENT ADMINISTRATION
*Printed name and title*

Sworn to before me and signed in my presence.

Date: December 4, 2017

_____
*Judge's signature*

City and State: Buffalo, New York

HONORABLE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT

STATE OF NEW YORK )
COUNTY ERIE )  SS:
CITY OF BUFFALO )

**VALENTINE T. ZIMNIEWICZ, JR.**, a Task Force Agent of the Drug Enforcement Administration (DEA), United States Department of Justice, Buffalo, New York, having been duly sworn, states as follows:

1.     I am a Police Detective employed by the Cheektowaga Police Department for the past 26 years. I was previously assigned as deputized Special Federal Officer from 2001-2003 with the FBI. I have been assigned as a narcotics detective since 2008.  I began my assignment as a Task Force Agent (TFA) with the United States Drug Enforcement Administration (DEA) in the Buffalo Resident Office on April 4, 2012, and was administered the oath of office as duly sworn Special Federal Officer (Special Deputation).  I am presently assigned to the DEA Task Force, and as such I am an "investigative or law enforcement officer" of the United States within, the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 801, *et seq.*

2.     During my law enforcement career, I have participated in numerous investigations targeting individuals engaging in the trafficking and distribution of narcotics.

Based on my training, experience in law enforcement, and conversations with DEA Special Agents and Task Force Agents, and other law enforcement officers, I am familiar with how controlled substances are cultivated, manufactured, processed, packaged, distributed, sold and used by individuals involved in drug trafficking activities, and how drug traffickers use electronic communications to facilitate their illegal activities. As a result of my training and experience, I am familiar with the language, conduct and customs of people engaged in narcotics transactions conspiracies. My investigative experience, as well as the experience of other law enforcement agents who are participating in this investigation, serve as the basis for the opinions and conclusions set forth herein.

3. I make this Affidavit in support of an application for a Criminal Complaint charging BRITTNEY C RIDGEWAY, with violating Title 21, United States Code, Section 841(a)(1), possession with intent to distribute a mixture or substance containing heroin, a Schedule I controlled substance. I have set forth only the facts that I believe are necessary to establish probable cause to believe that Ridgeway committed a violation of 21 USC § 841(a)(1).

## PROBABLE CAUSE

4. On November 24, 2017 at approximately 8:30 PM, Cheektowaga Police responded to a report of a possible overdose death at an address in south Cheektowaga. Upon arrival, the first responding officers discovered A 28 year old female deceased in the residence. Cheektowaga Investigators examined the scene and discovered a NARCAN kit which had been opened but unused, items of drug paraphernalia, and one (1) red and white checkered

wax envelope of the type commonly used to package heroin. This envelope had been opened and did not contain any apparent drugs. Further, the decedent was familiar to investigators as a known drug user / abuser.

5.     Investigators also discovered a cellular phone belonging to the decedent at the scene. Investigators accessed the telephone contents and noted that there were a series of text messages between the decedent's telephone and phone number (716) 994-1453 that appeared to be drug related in nature. The texts of those messages are as follows:

11/23/2017 5:27 PM – Incoming from 716-994-1453 – "How many"

11/23/2017 5:28 PM – Outgoing to 716-994-1453 – "A B dude"

11/23/2017 5:28 PM – Outgoing to 716-994-1453 – "You said 65 right"

11/23/2017 5:28 PM – Incoming from 716-994-1453 – "Yes"

11/23/2017 5:28 PM – Outgoing to 716-994-1453 – "Really hope this is the same stuff
that he has"

11/23/2017 5:29 PM – Incoming from 716-994-1453 – "If it's not the same it's just as
good a 8 or 9 is what they tell me"

11/23/2017 5:31 PM – Outgoing to 716-994-1453 – "Ok"

11/24/2017 10:16 AM – Incoming from 716-994-1453 – It was the same or better?"

6.     Based on my training and experience in narcotics investigations, the referenced series of text messages mean that the decedent is ordering one (1) bundle of heroin (referred in the text message at 5:28 PM as "B") with a negotiated price of $65.00. The next part of the conversation is an inquiry by the decedent as the quality of the heroin and the reply is stating

that the quality is very good using a 1-10 scale. Heroin is typically packaged at the street level in small wax envelopes. When ten of those envelopes are packaged together, usually secured with a rubber band, they are referred to as a "bundle". In reference to a 1-10 scale, heroin users and street level dealers often use the scale to report the potency of heroin being distributed with 1 being weak and 10 being the most potent.

7.    Investigators then queried a local police database relating to telephone number 716-994-1453 and discovered that number had been provided to Buffalo Police by Brittney C. Ridgeway as her cell phone number on an assault report in August 2017.

8.    Investigators learned that Brittney C. Ridgeway, had been the target of a narcotics investigation involving the distribution of heroin from late 2015 to early 2016 conducted by Cheektowaga Police Narcotics investigators and the Drug Enforcement Administration. Based on that investigation, the DEA arrested Ridgeway in March of 2016 on Federal drug distribution charges. Subsequently, Ridgeway pleaded guilty in front of US District Court Judge Richard Arcara to conspiracy to possess with intent to distribute and distribution of fentanyl. Judge Arcara sentenced Ridgeway to fifteen months incarceration followed by thirty six months post release supervision. On June 28, 2017, Ridgeway was released from incarceration and began supervised release.

9.    During the course of that investigation, law enforcement executed a search warrant at Rideway's residence. During the course of the search, investigators recovered a box containing numerous red and white checkered wax envelopes, which were similar in

4

appearance to the used envelope found at the scene of the current death investigation. These envelopes were of the type typically used to package and distribute heroin in the Buffalo area. Further, these envelopes are of the type commonly used to place in a bundle of ten envelopes and sold as such. This is significant in that street level distributors often use particular packaging for branding their product to differentiate from other dealers.

10.     On November 28, 2017, I contacted United States Probation Officer James Dyckman, who was Ridgeway's supervising Probation Officer, and advised him of the circumstances regarding the death.   Dyckman confirmed that the telephone number of record United States Probation had to contact Ridgeway was 716-994-1453 and that Dyckman had personally contacted Ridgeway using that number.

11.     On November 29, 2017, United States Probation met with Ridgeway at her place of employment.   Ridgeway refused to provide her cell phone for examination. United States Probation then conducted a search of Ridgeway's residence at 168 Waverly St, Buffalo, New York. During the search, probation officers recovered a box containing numerous red and white checkered wax envelopes under Ridgeway's bed.   These envelopes were similar in physical size and color to the empty envelope found near the decedent on November 24, 2017. Ridgeway was uncooperative with probation officers conducting the investigation.

12.     On November 30, 2017, Cheektowaga Police Investigators and your affiant met with a cooperating witness (CW), known and identified to Cheektowaga Police regarding the death investigation. The CW stated that on the evening of November 23, 2017, the

decedent arrived at the residence in south Cheektowaga and was in possession of numerous bags of heroin, which were packaged in red and white checkered envelopes. The CW stated that the decedent and the CW used some of that heroin together and that they later went to sleep and did not wake until around noon the following day.

13. The CW stated that the decedent then contacted someone named Brittney to obtain a bundle of heroin from Brittney, and to introduce the CW to Brittney to make future heroin purchases directly from Brittney. The CW had never met Brittney prior to that day.

14. The decedent told the CW that the price for a bundle of heroin was $65.00. The CW stated that Brittney arrived at the residence driving a silver or gray colored four door sedan. When Brittney arrived, the decedent received a telephone call from Brittney, but did not answer the call. Instead, the decedent and the CW went outside and entered Brittney's car, which had a young child inside of it. Brittney then drove the CW and the decedent to a store so that the CW could break a $100 bill to pay $65.00 for the bundle of heroin.

15. After breaking the bill, they returned to the address in Cheektowaga and parked in the driveway. The CW gave the decedent the $65.00 and the decedent exchanged the money with Brittney for one bundle, or ten bags, of heroin. The CW noted that the bags were red and white checkered wax bags. The CW and the decedent then exited the vehicle and went inside the residence.

16.     The CW provided a description of Brittney as a black female with a round face and around the same age as the CW or slightly older.    Brittney C. Ridgeway is a black female with a round face and similar age to the CW.

17.     Investigators then showed the CW a six pack photo array in an attempt to identify Brittney. The CW indicated that Brittney was either number 4 or 5 in the array. It is noted that picture 4 is a picture of Brittney C. Ridgeway.

18.     An administrative subpoena was issued to T-Mobile / Metro PCS for subscriber data and call records for telephone number 716-994-1453. A return of the subpoena revealed the subscriber for that phone to be Brittney Ridgeway of 321 Smith St in Buffalo, New York. A check of that address reveals it to be a vacant lot.

19.     Toll analysis for telephone number 716-994-1453 reveals that at or about the time the CW indicated that Brittney arrived at the Cheektowaga residence, there was an outgoing telephone call from 716-994-1453 to the decedent's number, which was not answered. In addition, after news of the decedent's death became public there were four outgoing calls from 716-994-1453 to the decedent's phone between the dates of November 25 and November 28, 2017.    These calls did not connect and the caller used *67 prior to placing the call, which is a mechanism that allows a caller to conceal their number to the phone which they are calling.

**WHEREFORE**, based on the foregoing, I respectfully submit that probable cause exists to believe that BRITTNEY C. RIDGEWAY, has violated Title 21, United States Code, Sections 841(a)(1), possession with intent to distribute, and distribution of, heroin, a Schedule I controlled substance.


TFA

VALENTINE T ZIMNIEWICZ JR.
Task Force Agent
Drug Enforcement Administration


Sworn to before me

this 4th day of December, 2017.


HONORABLE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE